UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
NICHOLAS CASALE,                   :
                                   :
                Plaintiff,         :    05 Civ. 4232 (MBM)
                                   :
    -against-                      :    OPINION AND ORDER
                                   :
METROPOLITAN TRANSPORTATION        :
AUTHORITY, PETER S. KALIKOW,       :
Chairman, METROPOLITAN             :
TRANSPORTATION AUTHORITY,          :
KATHERINE N. LAPP, Executive       :
Director, METROPOLITAN             :
TRANSPORTATION AUTHORITY, MARTIN   :
SANSVERIE, Inspector General,      :
METROPOLITAN TRANSPORTATION        :
AUTHORITY, and GARY DELLAVERSON,   :
Director, Labor Relations,         :
METROPOLITAN TRANSPORTATION        :
AUTHORITY,                         :
                                   :
                Defendants.        :
----------------------------------X

APPEARANCES

NORMAN SIEGEL, ESQ.                 NEIL H. ABRAMSON, ESQ.
(Attorney for plaintiff)            PETER P. RAHBAR, ESQ.
260 Madison Avenue                  DYLAN S. POLLACK, ESQ.
18th Floor                          (Attorneys for defendants
New York, NY 10016                  Metropolitan Transportation
(212) 532-7586                      Authority, Peter S. Kalikow,
                                    Katherine N. Lapp, and Gary J.
STEVEN J. HYMAN, ESQ.               Dellaverson)
ALAN E. SASH, ESQ.                  Proskauer Rose LLP
(Attorneys for plaintiff)           1585 Broadway
McLaughlin & Stern, LLP             New York, NY 10036
260 Madison Avenue                  (212) 969-3000
New York, NY 10016
(212) 448-1100                      LOUIS PECHMAN, ESQ.
                                    (Attorney for defendant
                                    Matthew D. Sansverie)
                                    Berke-Weiss & Pechman LLP
                                    488 Madison Avenue
                                    11th Floor
                                    New York, NY 10022
                                    (212) 583-6395

MICHAEL B. MUKASEY, U.S.D.J.

        Defendants Metropolitan Transportation Authority

("MTA") and persons sued as MTA executives[1] removed this case

from New York State Supreme Court, New York County, where

plaintiff Nicholas Casale had initiated a special proceeding

under Article 78 of New York's Civil Practice Law and Rules[2] and

then amended his petition to create a hybrid special proceeding

and action by adding a claim under 42 U.S.C. § 1983.  In the

initial verified petition ("original petition"), plaintiff

alleged that the decision to terminate his employment as Deputy

Director of Security for the MTA was arbitrary and capricious, in

bad faith, and contrary to law, and that defamatory information

disseminated with the stated reasons for his termination violated

his Fourteenth Amendment right to due process; he sought

reinstatement, back pay, and a name-clearing hearing.  (Verified

Pet. (Pet.), ¶¶ 49, 56)  Plaintiff's amended verified

petition/complaint ("amended petition") includes an additional

claim for damages under § 1983 predicated on the same alleged due

process violation.  (Am. Verified Pet./Compl. (Am. Pet.), ¶ 58)

---

    [1] Among those sued was Matthew D. Sansverie, incorrectly
referred to in the caption as Martin Sansverie.

    [2] Article 78 of New York's Civil Practice Law and Rules
establishes a state mechanism for judicial review of
administrative action that would have been provided earlier
through writs of certiori to review, mandamus, and prohibition.
N.Y. C.P.L.R. § 7801 et seq. (McKinney 1994 & Supp. 2005).

Plaintiff now moves to remand the case to state court on the ground that defendants' failure to remove within 30 days of receiving the original petition requires application of the time bar imposed by 28 U.S.C. § 1446(b). Plaintiff also seeks attorney fees, costs, and disbursements pursuant to 28 U.S.C. § 1447(c) for improper removal. For the following reasons, plaintiff's motion for remand is granted, but the request for attorney fees, costs, and disbursements is denied.

I.

The underlying dispute in this case began when plaintiff was fired from his position as Deputy Director of Security for the MTA on May 9, 2003. (<u>Id.</u> ¶ 2) However, plaintiff's motion for remand does not relate to the circumstances leading to his dismissal, but only to the events thereafter.

On or about September 8, 2003, plaintiff commenced an Article 78 proceeding against defendants in New York State Supreme Court, New York County. (Affirmation of Steven J. Hyman (Hyman Aff.), ¶ 4) Plaintiff's notice of petition stated that he would move the Court for "a judgment pursuant to CPLR Article 78, CPLR §§ 7803 and 7804." (Notice of Pet.) The original petition asserted two claims. The first contained the following two paragraphs:

> Petitioner is entitled to a name-clearing hearing to vindicate his Fourteenth Amendment right not to be

> deprived of his liberty interest in order to demonstrate
> the falsity of the stigmatizing charges made by
> respondents that "might seriously damage his standing and
> associations in the community" or that "might impose on
> him a stigma or other disability that forecloses his
> freedom to take advantage of other employment
> opportunities."
>
> Respondents have otherwise violated Petitioner's
> rights under the Fourteenth Amendment of the Constitution
> of the United States. (Pet., ¶¶ 49, 50)

The second claim alleged that "[p]etitioner's termination was
arbitrary and capricious and otherwise in bad faith in that it
was without legitimate basis in fact or law," and so he should be
reinstated and awarded back pay. (Id. ¶¶ 56-57)

On September 15, 2004, defendants (then respondents)
received a notice of motion and a supporting affirmation that
disclosed plaintiff's (then petitioner's) intent to move for
permission to amend the original petition. (Notice of Removal, ¶
1) Annexed to the notice and affirmation was a copy of the
amended petition. (Id. ¶ 2) The affirmation stated that, in
response to a recent Second Circuit decision holding that
compensatory damages were available in § 1983 actions where the
defendant had failed to provide a name-clearing hearing,
plaintiff wished to add a § 1983 claim and seek money damages in
addition to other available relief. (Hyman Aff., ¶¶ 6-9 (citing
Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)))

At a State Supreme Court appearance on December 21,
2004, counsel for defendants MTA, Peter Kalikow, Katherine Lapp,
and Gary Dellaverson said that they did not oppose the motion to

amend, but could not stipulate to the amendment for fear that
they would waive their right to removal should they do so.
(Decl. of Neil H. Abramson ("Abramson Decl."), ¶¶ 4-5)  Although
the parties submitted a proposed order granting the amendment as
unopposed, the Court instead ruled on the motion to amend in a
decision and order dated April 7, 2004.  (Id. ¶¶ 5-7)

        In addition to granting the motion to amend, the same
decision and order addressed the substantive issues of the case.
First, the Court held that plaintiff had established a "stigma
plus" due process violation and was therefore entitled to a name-
clearing hearing.  (Notice of Removal, Ex. 2, 10-11)  Second, the
Court ordered an evidentiary hearing on whether the MTA's
decision to fire plaintiff was arbitrary and capricious.  (Id. at
12-14)  The Court also determined that the Office of Inspector
General is not distinct from the MTA, and therefore denied a
motion to dismiss by defendant Sansverie. (Id. at 14)  The
decision and order was filed as a "non-final disposition" on
April 12, 2005, and a notice of entry was served on defendants on
April 15, 2005.  (Abramson Decl., ¶ 7)

        On April 22, 2005, in a conference before the State
Supreme Court, plaintiff's attorneys stated that plaintiff
intended to proceed with the amendment, and defendants' counsel
advised the Court that they would be removing the case to federal
court.  (Notice of Removal, ¶ 4)  The Court told the parties that

4

it would not move forward until the question of removal had been resolved, and asked counsel for defendants to indicate in the notice of removal that the Court was prepared to proceed expeditiously pursuant to its decision and order.  (Id.) Plaintiff served the amended petition on defendants that same day through a supplemental summons/notice of petition.  (Abramson Decl., ¶ 7)

The amended pleading contains three claims.  The first two are identical to the claims in the original petition described above.  (Am. Pet., ¶¶ 44-56)  The third asserts that "[r]espondents deprived Mr. Casale of a liberty interest without due process in violation of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, by making stigmatizing statements about him when terminating him from the MTA and failing to give him a name-clearing hearing."  (Id. ¶ 58) In addition to the relief sought in the original petition, the amended petition seeks a money judgment for lost wages, damage to reputation, standing, and business activities, and physical and emotional distress resulting from defendants' failure to provide a name-clearing hearing.  (Id. ¶¶ 4, 60-61)

On April 28, 2005, defendants filed a notice of removal in this court pursuant to 28 U.S.C. §§ 1441 and 1446.  The notice states that the first and third claims in the amended petition fall within this court's federal question jurisdiction under 28

U.S.C. § 1331, and that supplemental jurisdiction under 28 U.S.C. § 1367 is appropriate with respect to any purely state claims within the pleading.  (Notice of Removal, ¶¶ 6-9)

II.

Plaintiff moves to remand this case to New York State Supreme Court, New York County, on the ground that defendants' notice of removal was untimely because it was not filed within 30 days of receipt of the original petition.

A.  30-day Time Limit for Removal

Under the general removal statute, "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed."  28 U.S.C. § 1441(a) (2000).  Original federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. § 1331.  Recently, the Supreme Court has elaborated upon the scope of the "arising under" language in the federal question statute.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 123 S. Ct. 2363, 2366-68 (2005).  The statute grants jurisdiction not only where federal law creates a cause of action, but also where state law "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and

state judicial responsibility." <u>Id.</u> at 2368.  The existence of a federal cause of action to enforce a federal predicate to a state cause of action is "evidence relevant to, but not dispositive of," Congress's intent.  <u>Id.</u> at 2370.

Defendants' challenges to the removability of plaintiff's original petition -- a prerequisite for application of the time bar as described below -- present this court with two questions.  First, are claims brought within Article 78 proceedings outside the realm of original federal question jurisdiction and therefore precluded from removal?  Second, does the Supreme Court's holding in <u>Grable</u> cast any doubt on jurisdiction where the federal predicate in a state cause of action rests on a constitutional right enforceable through § 1983 but not through a federal cause of action created by the constitutional amendment in which the right is found?

If an initial pleading is removable, the first paragraph of the federal statute governing procedure for removal establishes a 30-day time limit for filing a notice of removal.  The statute mandates that "[the notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b).  The second paragraph of the statute allows 30 days for filing a notice of

removal in response to an amended pleading only if the initial
pleading was not removable.  This part of the statute provides
that "[i]f the case stated by the initial pleading is not
removable, a notice of removal may be filed within thirty days
after receipt . . . of a copy of an amended pleading, motion,
order or other paper from which it may first be ascertained that
the case is one which is or has become removable."  <u>Id.</u>

The Second Circuit has held that the 30-day time period
in the first paragraph of 28 U.S.C. § 1446(b) begins to run only
when the defendant is able to "intelligently ascertain"
removability from the face of the initial pleading.  <u>Whitaker</u> v.
<u>Am. Telecasting, Inc.</u>, 261 F.3d 196, 205-06 (2d Cir. 2001).  The
pleading must recite all the facts necessary to support removal,
and defendants need not embark on an investigation to discover
jurisdictional facts outside the four corners of the pleading.
<u>Id.</u> at 206; <u>see also</u> <u>Harris</u> v. <u>Bankers Life & Cas. Co.</u>, 425 F.3d
689, 694-98 (9th Cir. 2005).  The purpose of limiting application
of the time bar to such circumstances is to spare the federal
courts superfluous litigation arising from unwarranted removal.
<u>Soto</u> v. <u>Apple Towing</u>, 111 F. Supp. 2d 222, 225 (E.D.N.Y. 2000)
(quoting <u>E.W. Howell Co.</u> v. <u>Underwriters Lab., Inc.</u>, 596 F. Supp.
1517, 1520 (E.D.N.Y. 1984)); <u>see also</u> <u>Harris</u>, 425 F.3d at 698
(stating that such an interpretation of the statute "guards
against premature and protective removals and minimizes the

potential for a cottage industry of removal litigation").

Case law concerning the "intelligently ascertain" test tends to involve initial pleadings that fail to include all of the details necessary to determine diversity jurisdiction, e.g., Whitaker, 261 F.3d at 206; Harris, 425 F.3d at 695-96, or that are ambiguous as to whether the plaintiff is asserting purely state claims, e.g., Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524-25 (5th Cir. 1994); Soto, 111 F. Supp. 2d at 224. This court confronts a different problem. Plaintiff's original petition initiated an Article 78 proceeding through a state cause of action predicated on the violation of a federal constitutional right. The facts necessary to support removal were all present. However, as discussed below, the law regarding the removability of claims brought in Article 78 proceedings remains disputed, and the law governing whether a federal predicate to a state cause of action creates federal question jurisdiction demands application of the recently articulated Grable test, the consequences of which are not yet clear. The question, then, is how, if at all, these legal ambiguities -- generated by a factually unambiguous initial pleading -- bear upon the "intelligently ascertain" analysis.

B. The "Revival Doctrine"

Even when a defendant fails to remove within 30 days of a removable initial pleading as required by the first paragraph

of 28 U.S.C. § 1446(b), the judge-made "revival doctrine" may prevent remand. This doctrine revives a defendant's right of removal if an amended pleading changes the nature of a case so substantially that it is as if a new action has been brought. See Johnson v. Heublein Inc., 227 F.3d 236, 241 (5th Cir. 2000); Wilson v. Intercollegiate (Big Ten) Conference, 668 F.2d 962, 965-66 (7th Cir.), cert. denied, 459 U.S. 831 (1982); Gerety v. Inland Newspaper Representatives, Inc., 152 F. Supp. 31, 32-33 (S.D.N.Y 1957). The Second Circuit has not had occasion to comment on the doctrine's application, but the Seventh Circuit, noting candidly that "it is idle to pretend that" any formulation of the doctrine is "self-defining," has provided a comprehensive analytical framework. Wilson, 668 F.2d at 965. "The right to revive must be determined in each case with reference to its purposes and those of the 30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibility between state and federal courts." Id. This court must address such "purposes" and "general considerations" in relation to plaintiff's § 1983 claim -- the only addition to the original petition -- in order to determine if the amended petition revives defendants' right of removal.

A. <u>The Original Petition and the 30-Day Time Limit</u>

     1. <u>Removability of Article 78 Proceedings</u>

Defendants argue that, because the original petition initiated only an Article 78 proceeding, the claims in that petition were not within the original jurisdiction of the lower federal courts and were thus not removable under the general removal statute. Defendants specify no statutory ground for this argument, but base their contention on a single district court case and New York law itself. Neither of these sources presents a convincing reason for holding that the normal rules of federal question jurisdiction do not apply to Article 78 proceedings. The buried root of defendants' argument seems to lie in the notion that an Article 78 proceeding falls outside the "civil action" language of the federal question statute and the general removal statute. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1441(a) ("[A]ny civil action . . . may be removed . . . ."). Yet Supreme Court and Second Circuit precedent suggests the contrary.

Defendants cite <u>Kelly</u> v. <u>City of Mount Vernon</u>, 344 F. Supp. 2d 395 (S.D.N.Y 2004), and Article 78 itself, N.Y. C.P.L.R. § 7804 (McKinney 1994), in support of their position. <u>Kelly</u>,

without citation, pronounced that "[t]his court has no original jurisdiction over an Article 78 claim."  344 F. Supp. 2d at 406. Despite this broadly worded repudiation of jurisdiction, however, Kelly is easily distinguished from this case on its facts.  The claim at issue in Kelly had no federal element whatsoever; like plaintiff's second claim, it challenged a municipal decision as lacking substantial evidentiary basis and as arbitrary and capricious.  Id.  Yet the universe of claims brought in Article 78 proceedings does not stop with those arising from lack of evidence or lack of reasoned basis.  Article 78 proceedings allow petitioners to seek relief previously obtainable through writs of certiorari to review, mandamus, and prohibition.  N.Y. C.P.L.R. § 7801.  A court presiding over an Article 78 proceeding may consider only a limited range of questions, but one of these questions is "whether the body or officer failed to perform a duty enjoined upon it by law."  Id. § 7803(1).  Claims based on the federal Constitution are routine in Article 78 proceedings. E.g., Swinton v. Safir, 93 N.Y.2d 758, 762-764, 697 N.Y.S.2d 869 (1999) (deciding, based on federal case law but in an appeal from an Article 78 proceeding, whether the petitioner was entitled to a name-clearing hearing).  It appears that plaintiff's first claim -- that he is "entitled to a name-clearing hearing to vindicate his Fourteenth Amendment right" -- invoked a state cause of action allowing vindication of a federal constitutional

12

right.  (Pet., ¶¶ 49)  The broad language in <u>Kelly</u> takes no
account of the possibility that a claim brought in an Article 78
proceeding, as here, may be predicated on a violation of federal
rights.  The quoted statement in <u>Kelly</u> is simply overbroad when
applied here.

The language in Article 78 quoted by defendants is
equally unhelpful to their position.  State law may direct that
"[a] proceeding under this article shall be brought in [state]
supreme court," N.Y. C.P.L.R. § 7804, but this requirement has
nothing to do with whether the proceeding falls within a federal
jurisdictional statute.  If such a directive could deprive
federal courts of jurisdiction, state legislatures, not Congress,
would control the power of the federal judiciary.

Although defendants do not explain why claims in an
Article 78 proceeding could not lie within the original
jurisdiction of the federal courts, they imply that an Article 78
proceeding is not a "civil action" within the meaning of 28
U.S.C. §§ 1331 and 1441(a).  That reasoning was articulated in
<u>Greenberg</u> v. <u>Veteran</u>, 710 F. Supp. 962 (S.D.N.Y.), <u>rev'd on other</u>
<u>grounds</u> 889 F.2d 418 (2d Cir. 1989), where the District Court
found that "the wisdom of a general rule permitting the removal
of Article 78 proceedings" is "dubious."  <u>Id.</u> at 972 n.10.  Yet
the <u>Greenberg</u> Court's eloquent dicta expounding on why an Article
78 proceeding is not a "civil action" under the general removal

13

statute does not withstand the force of subsequent Supreme Court and Second Circuit decisions.  The Greenberg Court concluded that the term "civil action" may encompass "appeals from state or municipal administrative action via writ of prohibition or mandamus."  Id. at 970.  However, that Court declared it "beyond cavil that a statutory appeal of administrative state action, whether or not it involves diverse parties or a federal question, may not be filed in federal court."  Id. at 971.  From this principle, the Greenberg Court concluded that it was unlikely "Congress intended the term 'civil action' under the removal statute to be so sponge-like as to allow its absorption of every conceivable type of proceeding involving appeal from state or municipal administrative action which touches upon a federal question."  Id.  The Greenberg Court's initial presumption has since lost its cogency, as has the outcome that Court deduced.

In City of Chicago v. International College of Surgeons, 522 U.S. 156 (1997), the Supreme Court addressed whether "a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal courts."  Id. at 163.  In that case, the Court held that federal constitutional challenges to municipal administrative action brought under the Illinois Administrative Review Law were within the federal question

jurisdiction of the district courts, and thus removable. Id. at 163-66. The Court recognized that these "federal constitutional claims were raised by way of a cause of action created by state law." Id. at 165. It found that this state law provenance made no difference with respect to whether the issues presented the "substantial question of federal law" necessary for federal question jurisdiction. Id. (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983)) (internal quotation mark omitted). Thus, the fundamental premise in Greenberg -- that it is "beyond cavil that a statutory appeal of administrative state action . . . may not be filed in federal court," 710 F. Supp. at 971 -- is not "beyond cavil" at all. Moreover, fear that allowing removal of Article 78 proceedings would threaten federalism is unfounded because, as the Supreme Court explained recently, the federal question inquiry itself precludes jurisdiction where adjudication of a federal issue within a state claim would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc., 123 S. Ct. at 2368.

It is irrelevant that the particulars of an Article 78 proceeding might not track those of the Illinois Administrative Law. In Freeman v. Burlington Broadcasters, Inc., 204 F.3d 311 (2d Cir. 2000), the Second Circuit applied the principles of City

of Chicago when considering the removability of a case
challenging an administrative decision in Vermont. Id. at 316.
The Circuit made plain that technicalities of local procedure,
such as what an action or pleading is called, do not affect
federal question jurisdiction and removability. See id. at 317
("The well-pleaded complaint rule is concerned with the existence
of a federal question on the face of the document invoking a
state court's jurisdiction, not whether that document bears the
label 'complaint.'"). As did the Supreme Court in City of
Chicago and the Second Circuit in Freeman, I find that "neither
the jurisdictional statutes nor . . . prior decisions suggest
that federal jurisdiction [was] lacking" with respect to the
original petition. City of Chi., 522 U.S. at 163.[3]

_____

[3] Two other aspects of Second Circuit case law provide
further evidence that an Article 78 proceeding is a "civil
action" subject to the ordinary rules of federal question
jurisdiction and removal. Although these considerations are not
in themselves proof that Article 78 proceedings are removable,
they show that this court's reliance on City of Chicago and
Freeman is consistent with the inner logic of this Circuit's
treatment of Article 78 proceedings.
    First, a holding that Article 78 proceedings are not "civil
actions" with respect to the general removal statute would
conflict with precedent establishing that Article 78 proceedings
are "civil actions" with respect to other removal statutes.
E.g., Greenberg v. Veteran, 889 F.2d 418, 421-22 (2d Cir. 1989)
(allowing removal based on the "refusal clause" of 28 U.S.C. §
1443(2), which allows removal of "civil actions . . . for
refusing to do any act on the ground that it would be
inconsistent" with a law providing for equal rights).
    Second, other district courts within this circuit have
allowed removal of Article 78 proceedings under the general
removal statute without questioning whether the state case was a
"civil action." E.g., Still v. DeBuono, 927 F. Supp. 125, 128-29

16

## 2. Removability of a Fourteenth Amendment Predicate

Defendants also argue that the original petition was not subject to federal question jurisdiction, and therefore was not removable, because the Fourteenth Amendment itself does not create a private right of action, and because plaintiff could have asserted his constitutional claim initially in a § 1983 suit. Although Grable suggests that how Congress provides for the enforcement of federal rights may affect federal question jurisdiction when violations of federal statutes serve as predicates to state law claims,[4] this case involves a constitutional question that neither becomes insubstantial nor "threaten[s] to affect[] the normal currents of litigation," Grable & Sons Metal Prods., Inc., 123 S. Ct. at 2371, simply because Congress provided an alternative federal mechanism for private enforcement.

_____

(S.D.N.Y 1996).

I conclude that these factors, in addition to the recent Supreme Court and Second Circuit precedent addressing directly the question of jurisdiction over state proceedings to review administrative action, outweigh earlier general remarks contrasting special proceedings to civil actions for other purposes. E.g., Davidson v. Capuano, 792 F.2d 275, 280 (2d Cir. 1986) (stating, when considering the preclusive effect of an Article 78 proceeding, that "[a] special proceeding . . . differs from a civil action in several ways").

[4] In Grable, the Court treated a federal cause of action to enforce a statutory right as a "welcome mat," whose absence means "keep out" in certain circumstances when violation of the right is predicate to a state cause of action. 123 S. Ct. at 2370.

Grable involved a state quiet title action that hinged
on federal tax law.  Id. at 2366.  The Second Circuit applied
Grable where the underlying federal issue was the uniform rate
requirement for cable operators under 47 U.S.C. § 543(d).  Broder
v. Cablevision Sys. Corp., 418 F.3d 187, 191 (2d Cir. 2005).
Neither Grable nor Broder suggests that earlier cases treating
predicate constitutional violations should be reexamined.  In
particular, neither diminished the force of City of Chicago,
where the Supreme Court held that the plaintiffs' federal
constitutional challenges, which were brought under the Illinois
Administrative Review Law but nonetheless turned "exclusively on
federal law," were "unquestionably" within the scope of federal
question jurisdiction.  City of Chi., 522 U.S. at 164.  The same
result follows here with respect to the first claim in
plaintiff's original petition.

Even if this court were bound to re-evaluate whether an
allegation of a Fourteenth Amendment violation passes Grable's
test without considering City of Chicago, the outcome would be
the same.  It is true that the Second Circuit has held that there
is no private right of action against municipalities directly
under the Fourteenth Amendment, but this holding relied on a
determination by the Supreme Court that Congress had provided for
identical private enforcement through § 1983.  Turpin v. Mailet,
591 F.2d 426, 427 (2d Cir. 1979) (per curiam).  Turpin does not

establish that the rights protected by the Fourteenth Amendment
are insubstantial or that Congress intended to limit the district
courts' power to decide constitutional questions to the framework
of § 1983.  That a federal statute defines how private actors can
enforce pre-existing constitutional rights through a federal
cause of action does not imply that disputes over those rights do
not "arise under the Constitution" when they occur in the setting
of a state cause of action.

Thus, plaintiff's original petition was removable and
it is necessary to determine whether the pleading triggered the
30-day time limit under 28 U.S.C. § 1446(b).

### 3.  The "Intelligently Ascertain" Test

None of defendants' arguments suggests that the
original petition failed to allege a jurisdictional fact whose
absence would cause the initial pleading to fail the
"intelligently ascertain" test.  Rather, defendants contend that
the original petition did not allow them to ascertain
removability because it commenced a special proceeding rather
than a plenary action and because it presented a state cause of
action predicated on the Fourteenth Amendment, which does not
itself create a private right of action.  As discussed above, it
is true that neither the Supreme Court nor the Second Circuit has
explained directly what claims, if any, are removable in an
Article 78 proceeding under the general removal statute.  It is

also true that Grable's concern for the "normal currents of
litigation" leaves room for argument that constitutional
provisions without direct private rights of action do not fall
within the "arise under" language in 28 U.S.C. § 1331. However,
although this court has confronted these legal issues in deciding
whether the original petition was removable, such issues have no
bearing on whether there has been the notice of removability
required by the "intelligently ascertain" test to trigger the 30-
day time limit under 28 U.S.C. § 1446(b).

    As the Second Circuit explained in Whitaker, the
"intelligently ascertain" test demands that an initial pleading
provide the facts necessary to support removal. 261 F.3d at 206.
When federal question jurisdiction is at issue, this requirement
is met if the initial pleading contains a claim that explicitly
and necessarily relies on federal law. See Soto, 111 F. Supp. 2d
at 224-25 (holding that defendant could not intelligently
ascertain removability where complaint alleged national origin
discrimination without a statutory reference). Plaintiff's
original petition contained such a claim. The first claim stated
directly that plaintiff's request for a name-clearing hearing
hinged on a determination that plaintiff's Fourteenth Amendment
rights had been violated. There was no ambiguity suggesting that
plaintiff was basing his claim entirely on state law with no
federal component, say by predicating the claim for a name-

clearing hearing on the Due Process Clause in the New York State Constitution, N.Y. Const. art. 1, § 6. Defendants may be correct that the removability of the original petition was unclear, but plaintiff held back no facts whose presence would have made removability clearer. If the "intelligently ascertain" test could defeat removability whenever there was present the kind of uncertainty described in defendants' submissions to this court, the only way an initial pleading could ever trigger the 30-day time limit in 28 U.S.C. § 1446(b) would be for it to present unassailable legal justification for potential removal. Yet the sheer multiplicity of district court decisions and the often manifest acumen of the legal profession are powerful evidence that there is little in the law that is unassailable. Such a test would effectively nullify the first paragraph of 28 U.S.C. § 1446(b).

Moreover, defendants' proposed expansion of the "intelligently ascertain" test does not serve the test's purposes. Requiring a plaintiff to allege all facts necessary for federal question removability relieves defendants of a duty to investigate the plaintiff's intentions while the clock is ticking under 28 U.S.C. § 1446(b). Cf. Whitaker, 261 F.3d at 206 (holding, in a diversity case, that the defendants were not required to investigate addresses left out of the complaint). Yet when an initial pleading is unambiguous as to a plaintiff's

intentions, like the original petition was in this case, there is
nothing left to "investigate" –– plaintiffs know nothing more
than defendants do.  A defendant need do no more than conduct
legal research and make a reasoned decision about whether to
remove; there is no pressure to make hasty removals based on
incomplete information that might be impossible to gather in 30
days.  In other words, the policy concerns that lead courts to
guard against "guessing" by defendants, see Richstone v. Chubb
Colonial Life Ins., 988 F. Supp. 401, 403 (S.D.N.Y. 1997), do not
justify defendants' proposed gloss on the statutory text.

Because plaintiff's original petition was removable and
satisfied the "intelligently ascertain" test, defendants are now
time-barred from removing the case unless plaintiff's amended
petition revived their right to do so.

B.  The Amended Petition and the Revival Doctrine

Addition of the § 1983 claim in the amended petition
warrants no relief from the statutory time bar.  Other district
courts have concluded that the judge-made revival doctrine should
be applied in "an exceedingly narrow scope, to function
exclusively as an 'escape hatch' in those cases in which the
facts identified [by the Seventh Circuit] in Wilson as being
enough to overcome the dual policy interests served by the thirty
day time limit are found."  Dunn v. Gaiam, Inc., 166 F. Supp. 2d
1273, 1279 (C.D. Cal. 2001); accord Clegg v. Bristol Meyers-

Squibb Co., 285 B.R. 23, 31 (M.D. Fla. 2002). I agree. Plaintiff's amended pleading, whose third claim employs a new procedural mechanism to resolve the single disputed substantive issue stated in the pre-existing first claim, does not fall within this narrow scope, even though the amended pleading seeks a form of relief -- compensatory money damages -- that is not available in Article 78 proceedings.

As the Seventh Circuit described in Wilson, the 30-day limit in 28 U.S.C. § 1446(b) serves two purposes: to prevent the defendant from removing in response to negative developments in state court, and to avoid "the waste and delay of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court." Wilson, 668 F.2d at 965. The revival doctrine resurrects a defendant's right of removal when the time bar "would not serve the purposes of the limitation in any significant way." Id. at 966. To be sure, there is no indication here that when plaintiff amended, defendants anticipated the State Supreme Court's adverse decision and order, and notified that Court of their intention to remove as a result. However, the amendment "did not change the original [petition] so drastically" that the second purpose of the limitation -- preventing waste and delay -- would not be served by enforcing the limitation. Id.

Plaintiff's claim for a name-clearing hearing in the
original petition rested solely on an allegation that defendants
had deprived plaintiff of a liberty interest in violation of the
Fourteenth Amendment.  The basis for plaintiff's § 1983 claim is
that same substantive right.  Over a year and a half passed
between when that issue was placed before the State Supreme Court
in September 2003 and when that Court rendered its decision in
April 2005.  It is true that the § 1983 claim raises additional
hurdles to liability, such as qualified immunity and the need to
show municipal policy or custom.  See Harlow v. Fitzgerald, 457
U.S. 800, 810 (1982); Monell v. Dep't of Soc. Servs., 436 U.S.
658, 690-91 (1978).  It is also true that the claim converted an
Article 78 proceeding into a hybrid special proceeding/plenary
action, and introduced new procedural rules with respect to
discovery.  See Davidson v. Capuano, 792 F.2d 275, 280 (2d Cir.
1986) (discussing the streamlined procedures for resolution of
Article 78 proceedings).  However, these features are all
incidental to the "basic legal theory of the action" -- the
constitutional violation.  Wilson, 668 F.2d at 966.

The only significant way in which this case differs
from Wilson, which held that the addition of a § 1983 claim to
allegations of Fifth and Fourteenth Amendment violations did not
revive the removal period, id. at 964, 966, is that here the §
1983 claim seeks a form of relief not available in an Article 78

proceeding -- compensatory money damages, N.Y. C.P.L.R. § 7806 (allowing only damages "incidental to the primary relief sought"). This difference does not require a different result. The Seventh Circuit wrote in <u>Wilson</u> that the "amendments did not change the target of [the plaintiff's] attack or the nature of relief sought." <u>Wilson</u>, 668 F.2d at 966. Here, plaintiff's amendment did change the nature of the relief sought, and came in response to a definitive statement by the Second Circuit that § 1983 allows for recovery of money damages when a name-clearing hearing itself would not make the plaintiff whole. <u>See</u> <u>Patterson</u> v. <u>City of Utica</u>, 370 F.3d 322, 338 (2d Cir. 2004). However, the Seventh Circuit's statement does not suggest that a new form of relief is either necessary or sufficient to revive the right of removal. It is merely one characteristic of an amended pleading that courts must take into account when considering "the purposes of both the 30-day limitation and its judicially engrafted exception." <u>Wilson</u>, 668 F.3d at 966. In this case, the basis of the first claim is identical to the basis of the third claim, and defendants took no issue with litigation of this right in state court even though the case was originally removable. Thus, application of the time bar to the amended pleading would substantially serve the purposes of the statute by preventing waste and delay.

The one case that defendants cite as allowing revival supports enforcement of the time bar here. In _Barnes_ v. _Cathers & Dembrosky_, 02 CV 5296 (RO), 2003 WL 22928640 (S.D.N.Y. Dec. 10, 2003), the Court held that addition of federal RICO claims to claims under state law and the federal Sherman Act revived the right of removal. _Id._ at *1. The Court stated that by adding the RICO claims, the "plaintiffs substantially altered the litigation with the first federal claim over which the state court had concurrent jurisdiction, and faced defendants with the necessity of removing to obtain federal judicial oversight of a major and relatively novel area of federal quasi-criminal statutory governance." _Id._ The factors that compelled revival in _Barnes_ do not exist in the instant case. First, whereas here the original petition contained a removable claim that would require both state and federal courts to answer the same substantive federal question, the only removable original claim in _Barnes_ was brought under the Sherman Act, which was subject to "automatic dismissal" because the state court did not have concurrent jurisdiction. _Id._ Second, the RICO claims in _Barnes_ invoked "a major and relatively novel area of federal quasi-criminal statutory governance," _id._, not, as here, recently clarified standards as to the type of damages available for a particular substantive violation. In short, enforcement of the 30-day time limit in _Barnes_ would have done little to serve the

26

statute's purpose of preventing waste and delay; by contrast, enforcement here would serve that purpose.

Because plaintiff's amended petition did not create conditions warranting application of the revival doctrine, removal remains time-barred.

IV.

An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The purpose of this statute is to prevent the "abuse, unnecessary expense and harassment" suffered by a plaintiff as a result of improper removal. Circle Indus. USA v. Parke Constr. Group., 183 F.3d 105, 109 (2d Cir. 1999). Bad faith is not a prerequisite to requiring payment. Namazee v. Premier, Inc., 232 F. Supp. 2d 172, 181 (S.D.N.Y. 2002). Rather, the decision to award costs and attorney fees demands "a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." Morgan Guar. Trust Co. of N.Y. v. Republic of Palau, 767 F. Supp. 561, 563 (S.D.N.Y 1991), aff'd 971 F.2d 917 (2d Cir. 1992).

Although plaintiff's motion for remand is granted in whole, an award of costs, disbursements, and attorney fees would not "serve[] the purpose of deterring improper removal." Circle Indus. USA, 183 F.3d at 109. As discussed throughout this

opinion, defendants' removal petition raised legitimate and sometimes complex questions regarding the removability of Article 78 proceedings, the effect of <u>Grable</u> on federal predicates, the "intelligently ascertain" test, and the scope of the revival doctrine. Therefore, equity does not require an award of costs and expenses under 28 U.S.C. § 1447(c).

\*        \*        \*

For the reasons set forth above, plaintiff's motion for remand to New York State Supreme Court, New York County, is granted, except insofar as plaintiff requests costs, disbursements, and attorney fees. Settle order on ten days' notice.

SO ORDERED:

Dated:    New York, New York
          December 5, 2005

Michael B. Mukasey
U.S. District Judge

28